IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DEXTER LANIGAN and JAMIE LANIGAN,<br>    Plaintiffs,<br><br>    v.<br><br>MARINA DISTRICT DEVELOPMENT COMPANY, LLC,<br>trading as<br>BORGATA HOTEL CASINO & SPA,<br>    Defendant. | CIVIL NO. 08-5201(NLH)(JS)<br><br>OPINION |

**APPEARANCES:**

GREGORY EDWARD SCIOLLA
JOHN D. CIRRINICIONE
LEONARD, SCIOLLA, HUTCHISON, LEONARD & TINARI, LLP
712 EAST MAIN STREET
SUITE 1A
MOORESTOWN, NJ 08057

    On behalf of plaintiffs

VICTOR P. WASILAUSKAS
COOPER LEVENSON APRIL NIEDELMAN & WAGENHEIM PA
1125 ATLANTIC AVENUE
ATLANTIC CITY, NJ 08401

    On behalf of defendant

**HILLMAN**, District Judge

    Presently before the Court is defendant's motion for summary judgment on plaintiffs' claims concerning an assault that occurred on defendant's premises. For the reasons expressed below, defendant's motion will be granted.

**BACKGROUND**

    On December 17, 2006 at 2:00am, plaintiff Dexter Lanigan entered the elevator at the Borgata Hotel and Casino, where he was

staying the night after an evening of dining and gambling.  When he boarded the elevator, four men were already on it.  Plaintiff engaged the men in a friendly conversation regarding the upcoming football game between the Philadelphia Eagles and New York Giants.  It appeared to plaintiff that three of the men were Giants fans, as they were criticizing a certain Eagles player, while the other male supported plaintiff's point-of-view as an Eagles fan.  Plaintiff relates that his interaction with these men was calm and casual.

When the elevator reached plaintiff's floor--the 25th--the man behind plaintiff who had appeared to be a fellow Eagles fan suddenly wrapped one of his arms around plaintiff's neck and twisted him to the left side of the elevator.  The man twisted plaintiff out of the elevator, followed by the three other men.  Plaintiff claims that he was plunged into a statue and then choked, punched, and kicked by all four men.  The four men then ran down the hallway, and have never been identified or apprehended.  Plaintiff believes that the reason he was assaulted was because he was an Eagles fan.  As a result of the assault, plaintiff suffered an injury to his right arm, as well as permanent injury to his lower back.

Plaintiff, along with his wife, Jamie Lanigan, subsequently filed a complaint against defendant Marina District Development Company, LLC, which operates the Borgata.  Plaintiff claims that defendant is liable for Mr. Lanigan's injuries because it was

negligent in its duty of care to protect him, a business invitee, from a known dangerous condition. Additionally, plaintiffs claim that defendant breached its implied contract with plaintiffs to provide a safe and secure environment. Mrs. Lanigan has also lodged a claim for loss of consortium.

Defendant has moved for summary judgment, arguing that plaintiffs have not identified any facts that must be presented to a jury for determination as to whether defendant breached its duties to plaintiffs. Defendant has also moved for judgment in its favor on plaintiffs' other two claims. Plaintiffs have opposed defendant's motion.

## DISCUSSION

**A.   Jurisdiction**

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

**B.   Summary Judgment Standard**

Summary judgment is appropriate where the Court is satisfied that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(c).

An issue is "genuine" if it is supported by evidence such that

3

a reasonable jury could return a verdict in the nonmoving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit.  Id. In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor."  Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)(quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.  Id.  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  Anderson, 477 U.S. at 256-57.  A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements.  Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

4

**C.   Analysis**

   **1.   *Plaintiffs' premises liability claim***

   The law on premises liability for business invitees has been long-established. "Business owners owe to invitees a duty of reasonable or due care to provide a safe environment for doing that which is within the scope of the invitation," and that duty of care "requires a business owner to discover and eliminate dangerous conditions, to maintain the premises in safe condition, and to avoid creating conditions that would render the premises unsafe." Nisivoccia v. Glass Gardens, Inc., 818 A.2d 314, 316 (N.J. 2003) (citations omitted).

   Typically, that standard has been applied in circumstances where a patron is injured by an unsafe condition of the actual physical premises, such as water or food on the floor. The case here casts the law on premises liability in a different context-- that the lack of proper security measures at the business establishment created a known dangerous condition that resulted in a patron's injuries. Despite, however, that different context, the elements to prove a premises liability claim are the same.

   In order to make out a *prima facie* case of premises liability, a plaintiff is required to show either (1) that defendant knew of the unsafe condition for a period of time prior to plaintiff's injury sufficient to permit defendant in the exercise of reasonable care to have corrected it; or (2) that the condition had existed

for a sufficient length of time prior to plaintiff's injury that in the exercise of reasonable care defendant should have discovered its existence and corrected it. Collier v. Borgata, 2009 WL 2707359, *5 (N.J. Super. App. Div. 2009) (citing Parks v. Rogers, 176 N.J. 491, 498 n.3 (2003); Nisivoccia, 818 A.2d at 316; Bauer v. Nesbitt, 198 N.J. 601, 615 (2008)).

New Jersey law has developed another standard, born out of equitable considerations, that does not require a plaintiff to prove notice. A plaintiff is relieved of proving notice "in circumstances in which, as a matter of probability, a dangerous condition is likely to occur as the result of the nature of the business, the property's condition, or a demonstrable pattern of conduct or incidents." Nisivoccia, 818 A.2d at 316. This "mode-of-operation" rule, which has been incorporated into New Jersey's Model Jury Instructions, states "that when a substantial risk of injury is inherent in a business operator's method of doing business, the plaintiff is relieved of showing actual or constructive notice of the dangerous condition." Id. at 317. Accordingly, a plaintiff is entitled to an inference of negligence, and the burden of production is shifted to the defendant, who may avoid liability if it shows that it did "all that a reasonably prudent man would do in the light of the risk of injury [the] operation entailed." Id. (citing Wollerman v. Grand Union Stores, Inc., 221 A.2d 513 (N.J. 1966)). Thus, "[a]bsent an explanation by

6

defendants, a jury could find from the condition of the premises and the nature of the business that defendants did not exercise due care in operating the [establishment], and that said negligent operation was the proximate cause of [the] injuries." Id. (citations omitted). Of course, even under this standard, the ultimate burden of persuasion remains with the plaintiff. See id.

In this case, defendant has moved for summary judgment, arguing that plaintiffs have failed to prove their *prima facie* case that defendant had notice that its business invitee could encounter the situation faced by Mr. Lanigan. Defendant argues as a primary matter that simply because Mr. Lanigan was assaulted on its premises, it is not automatically liable. Further, defendant argues that it cannot be held liable because plaintiffs have failed to demonstrate that defendant had any actual or constructive knowledge of a dangerous condition--that is, defendant argues that it did not have, and could not have had, any knowledge that Mr. Lanigan was going to be assaulted in the guest elevator and hallway under the circumstances described by Mr. Lanigan.

In opposition, plaintiffs argue that defendant had notice of the dangerous conditions defendant fostered in the guest elevators and hallways. To support their argument, plaintiffs point to 12 assaults that occurred in the guestroom hallways in the preceding two years. Despite knowing that patrons had been assaulted twelve times in the hallways, defendant failed to have video cameras in

7

the hallways, and only performed a security sweep of the hallways once at the beginning of each eight to ten hour security shift. Moreover, plaintiffs argue that defendant's failure to have actively monitored cameras in the elevators shows defendant's breach of its duty of care to its guests. Overall, plaintiffs contend that defendant's knowledge of the high crime rate of Atlantic City and the previous 12 assaults, combined with defendant's failure to provide proper security measures, shows that defendant had notice of the dangerous condition which caused Mr. Lanigan's injuries, and that defendant's failure to cure that dangerous condition was a breach of the standard of care for business invitees.

In response, defendant argues that the previous assaults on different guests did not provide defendant with any notice that four Giants fans would assault Mr. Lanigan because he was an Eagles fan. Further, defendant contends that the incident happened in a matter of seconds, and that because Mr. Lanigan did not fear for his safety or recognize any danger from the four men until he was suddenly grabbed and pushed into the hallway, defendant could not have known that plaintiff was going to be subjected to such violence.[1] Defendant reiterates that it must only provide its

---

[1] Although it appears that the four men can be seen on the video recording in the elevator, there is no record evidence documenting the assault on Mr. Lanigan, which is consistent with the fact that there were no hallway cameras or any other witnesses to the incident. As noted above, the four men have

8

business invitees with ordinary and reasonable care, and because it provided such care to Mr. Lanigan, it cannot be held liable for an incident that it did not create or have any knowledge would occur.

The Court agrees with defendant that in this particular case, taking all inferences in favor of plaintiffs, plaintiffs cannot demonstrate that defendant breached its duty of care to Mr. Lanigan.  First, with regard to defendant's notice of a dangerous condition, plaintiffs' proofs fail to support that element. Plaintiffs' main evidence to support notice is the fact that 12 assaults occurred in the Borgata hotel guestroom hallways in the two years before Mr. Lanigan's assault.  The problem with this evidence is that plaintiffs have not provided any substantive information about those incidents.  If plaintiffs showed that those prior incidents involved scenarios similar to what Mr. Lanigan experienced, plaintiffs' argument as to defendant's notice would be more persuasive.  Without further description, however, the 12 incidents may have involved domestic disputes, altercations regarding a neighboring guest's disturbing noise, muggings by a

---

never been identified or apprehended, although it is possible
that they were also guests at the Borgata, since in order to gain
entry to the guest elevators, patrons must present room key cards
to Borgata security personnel.  Thus, Mr. Lanigan's account of
the assault cannot be verified by any other source.  Defendant,
however, has not challenged the validity of Mr. Lanigan's account
of his assault, and the Court has not been provided with any
reason to do so independently, particularly because at this
stage, the Court must view plaintiffs' case in the light most
favorable to them.

9

solitary male, or a variety of other encounters that are completely unrelated to what Mr. Lanigan experienced.  Such prior events, unrelated in nature, cannot serve to provide defendant with notice that, in an elevator accessed only by registered guests, four men, who had been engaging in an innocuous conversation about football with Mr. Lanigan, would suddenly attack him in the hallway when the elevator stopped at the floor of Mr. Lanigan's guestroom.

Plaintiffs' other proof as to notice consists of defendant's knowledge of the high crime rate of Atlantic City, and that more criminal activity occurs during the hours of 2:00am and 6:00am than at any other time of day.  These general observations do not translate into notice to defendant that Mr. Lanigan's specific incident would occur.  Accord Norris v. Borough of Leonia, 734 A.2d 762, 773-74 (N.J. 1999) (explaining that "[c]omplaints of neighborhood residents about a dangerous condition may serve to establish actual or constructive notice to a municipality of *that condition*" (emphasis in original)).  Indeed, to hold otherwise would require that all business establishments in Atlantic City that have invitees on their premises from 2:00am through 6:00am insure the absolute safety of their patrons.  That is contrary to New Jersey law.  See, e.g., Znoski v. Shop-Rite Supermarkets, Inc., 300 A.2d 164, 166 (N.J. Super. Ct. App. Div. 1973) (explaining that a business "is not an insurer for the safety of its patrons").

Consequently, because plaintiffs cannot show that defendant

had sufficient notice of the alleged dangerous condition of the Borgata hotel guest elevators and room hallways, plaintiffs cannot support their premises liability claim on this basis.

Next, although plaintiffs do not specifically argue that defendant's mode-of-operation created the dangerous condition alleged by plaintiffs, their proffered evidence and argument in their brief appears to advance such a theory. Specifically, it appears that plaintiffs contend that defendant's (1) failure to employ actively manned real-time video surveillance of the elevators and the hallways, (2) failure to provide continuous sweeps of the hotel guestroom floors by security personnel, particularly at the peak time for criminal activity (2:00am - 6:00am), (3) failure to train security personnel on the high crime rate of Atlantic City and in proper law enforcement principles and techniques, and (4) failure to post signs alerting hotel guests to the lack of these security measures, created the four men's ability to assault Mr. Lanigan without retribution. Accepting as true all of plaintiffs' claimed security failures, plaintiffs' premises liability claim still fails on this basis as well, because defendant could not have prevented the incident even if all suggested security measures had been in place. See Nisivoccia, 818 A.2d at 316 (citation omitted) ("The duty of due care requires a business owner to discover and eliminate dangerous conditions . . . .").

Under plaintiffs' security scheme, a security officer manning the real-time video surveillance monitor in the early morning hours of December 17, 2006, would have observed Mr. Lanigan entering the elevator and engaging in conversation with the four males already on the elevator as it ascended to the 25th floor.  By Mr. Lanigan's own testimony, the conversation was conducted in a normal tone, with no arguing or screaming or any other aggressive or violent gestures.  At that point, the monitoring security officer would not be alerted to any dangerous condition.  When the one man suddenly wrapped his arm around Mr. Lanigan's neck and pushed him into the hallway, the manned real-time surveillance video camera in the hallway would have captured the altercation, and an actively roving guest floor security guard would have been immediately alerted to respond.  Such security measures would not have helped Mr. Lanigan, however, because he testified that the entire incident lasted no more than a minute, and unless the security guard was only steps away, he would have arrived too late to stop it.

Prior to this incident there was no indication that these men had been acting inappropriately in the casino, harassing other guests, or otherwise raising suspicion.  Thus, prior to the assault, there was nothing about these particular men that would have caused defendant to have a duty to protect Mr. Lanigan from them.  As to how defendant conducted its business--i.e., how defendant provided security to its guests--it is too speculative to

determine whether conspicuously posted signs alerting guests to the presence of active video surveillance would have deterred these men from attacking Mr. Lanigan.  It is also too speculative to predict how the men would have acted if a security guard happened to be on the 25th floor in front of the elevators when Mr. Lanigan was man-handled out of it.[2]  Short of having a security guard in the elevator and security guards stationed at intervals on each guest floor, unfortunately there was nothing defendant could do to prevent the situation Mr. Lanigan found himself in.  See Kiely v. Atlantic City Showboat, Inc., 2010 WL 323520, *3 (Jan. 10, 2010) (explaining that the mode-of-operation standard analyzed in Nisivoccia requires the plaintiff to show that the defendant's method of doing business made the dangerous condition more likely to occur); see also Zepf v. Hilton Hotel & Casino, 786 A.2d 154, 161 (N.J. Super. Ct. App. Div. 2001) (discussing Clohesy v. Food Circus Supermarkets, Inc., 694 A.2d 1017 (1997)) (explaining that because a business owner has a duty to protect its patrons from

---

[2]Plaintiffs surmise that Mr. Lanigan was attacked outside of the elevator because his assailants knew there were video cameras in the elevator, but not in the hallways.  Crediting this assumption does not support plaintiffs' argument that defendant's security measures were lacking.  Instead, if this were true, it evidences the misguided mentality of Mr. Lanigan's attackers, as it begs the question of why these men would attack Mr. Lanigan after being videotaped during the entire 20-plus floor ascent.  Moreover, the incident described by Mr. Lanigan shows that a difference in opinion over football teams, and not a premeditated act of violence with considerations of video surveillance activity, precipitated the assault.

foreseeable criminal acts which occur on its property, it has a duty to provide security--what kind of security, however, is "determined on a case-by-case basis, applying the totality of the circumstances standard").

Plaintiffs ask the Court to not compare their case to ones discussing premises liability for slip-and-falls and other injuries caused by a physical defect in a defendant's property. Because the law was crafted when considering those situations, plaintiffs argue that the standard must be reconsidered in light of their claims concerning a business's duty to provide proper security to protect the safety of its invitees.[3] Although the Court recognizes the

---

[3] Plaintiffs describe defendant's advertising of the hotel and casino as "a fun and safe place to [drink,] dine, gamble, and even spen[d] the night while possessing potentially large sums of money in an area possessing a higher than normal crime rate." (Pl. Br. at 22, 27.) Perhaps, then, plaintiffs' case is more similar to those cases addressing premises liability in the context of higher risk activities, such as using heavy gym equipment, horseback riding, skiing, and roller skating. In those cases, the courts have acknowledged that even though the business must maintain its premises in a condition safe from defects that the business is charged with knowing or discovering, "it need not ensure the safety of its patrons who voluntarily assume some risk." Stelluti v. Casapenn Enterprises, LLC, 1 A.3d 678, 691 (N.J. 2010) (further explaining, "Any requirement to so guarantee a patron's safety from all risk in using equipment, which understandably is passed from patron to patron, could chill the establishment of health clubs. . . . And, further, it is not unreasonable to encourage patrons of a fitness center to take proper steps to prepare, such as identifying their own physical limitations and learning about the activity, before engaging in a foreign activity for the first time"); Hubner v. Spring Valley Equestrian Center, 1 A.3d 618, 629 (N.J. 2010) ("The Equine Act, like the Ski Act and the Roller Skating Rink Act, is designed to establish a dividing line between the known and inherent risks of the endeavor that are assumed by the

difference between a patron who has slipped in a long-standing, unremediated puddle at a supermarket and a patron who is violently assaulted in a hotel's elevator, premises liability is not strict liability, and just because the incident occurred at defendant's hotel does not automatically cause defendant to be liable for plaintiffs' damages.  Even considering plaintiffs' vigorous argument that defendant should have employed more stringent security measures in the hotel's guestroom floors, plaintiffs have not met their burden of establishing a disputed issue of fact regarding defendant's actual or constructive knowledge of the dangerous condition, or its creation of the dangerous condition. Accordingly, summary judgment must be entered in defendant's favor on plaintiffs' premises liability claim.

### 2.   *Plaintiffs' breach of contract claim*

Defendant has moved for summary judgment on plaintiffs' breach of contract claim, arguing that no contract existed between defendant and plaintiffs.  Plaintiffs counter that they had an implied contract with defendant that defendant would protect all patrons who enter defendant's hotel or casino because of the presence of security and surveillance departments and employees. (Pl. Br. at 28-29.)  Plaintiffs have not cited to any law that supports such a cause of action.  Consequently, summary judgment on

---

participant, and those events or conditions that are within the control of, and thus are part of the ordinary obligations of, the facility's operator.").

15

plaintiffs' breach of contract claim must entered in defendant's favor.

### 3. *Jamie Lanigan's loss of consortium claim*

Jamie Lanigan, Mr. Lanigan's wife, has asserted a claim for the loss of her husband's services and consortium due to defendant's negligence. Because the Court has found that Mr. Lanigan's premises liability claim is unsupportable, Mrs. Lanigan's derivative loss of consortium claim is similarly unsupportable. As such, summary judgment must be entered in defendant's favor on this claim as well.

### **CONCLUSION**

For the reasons expressed above, defendant's motion for summary judgment on all of plaintiffs' claims against is granted. An appropriate Order will be entered.

Date: March 28, 2011                     s/ Noel L. Hillman

At Camden, New Jersey                   NOEL L. HILLMAN, U.S.D.J.